*322 Opinion of the Court, by
Judge Owsley.
THIS writ of error is prosecuted to reverse a judgment rendered by the court below against the present plaintiffs, in an action of ejectment brought against ^em *n ^at court, the defendants,
The object of the suit was to recover from the present plaintiffs the possession of land, included in a patent. *323 which issued to Benjamin Harrison, as well cís a patent which issued to Minor Winn, the aneestor of the present defendants.
J[0n0forPprop^ erty app,.0F prfated to fore the prop-’ erty.is taken, actua]]j received by the., proprietor.,
The patent which issued to Winn, is the eldest in date, and on the trial in the court below, after producing that patent in evidence, the present plaintiffs introduced evidence conducing to show that it included the land’in contest, and that they were the heirs* and legal representatives of the patentee, Winn, who in 1813, departed ibisRfe, without having disposed; of the land. The present plaintiffs, who were defendants in the court below, then introduced and read' in evidence, an order of the county court of Harrison county, made at the May term, 1798, to wit: . ■
“ Ordered,. that thirty acres of land, the property of Benjamin Harrison, lying in this county, and on the west sjde of main Licking, and bounded as follows, to wit: Beginning at the mouth of Beaver creek, and on the lower side thereof;- from thence, north, seventy-five^ poles; thence, west, at right angles,.so far as will include the quantity of thirty acres, be .laid off and established a town by the name of Marysville, and-the property thereof is vested i-n Samuel Lewis, James Gil-, kerson, John Barns, John Huston and Lawrence Hanson, trustees, a majority of whom shall lay off the’same into convenient lots, streets and'alleys, and sell said lots for the best price, &c. &c.-A-nd the said Benjamin Harrison gave bond; with Hugh Miller and Nathaniel Rawlings, his securities, in the penalty of £1000; conditioned for paying the money arising from th'e sales of the saiiMots, to'any person who shall have a better title to sám land.”
They also read in evidence th,e bond which was executed by Harrison and his.securities, as mentioned in the order of the-county court; and proved that the town is included within the boundary of the land in contest:
After the evidence on both, sides was through, the court below, on the motion of the present defendants,, instructed the jury that their title derived under the vpatent of Minor Winn, was not divested by any thing contained in the order establishing;the town of Marys-ville. Exceptions were taken to the opinion of the . court, and tile first question to which the attention of this court will be directed, involves l-fie correctness o-fi that opinion.
*324 If any effect be given to the act of the legislature air-bliotisliig county .courts to establish towns within their respective counties, it is perfectly clear, that the opinion of the court below cannot be sustained. The act (2 Dig. L. K. 1213) provides that “ the county courts in this commonwealth, shall be, and the same are hereby vested with full power and authority, in-all cases within the bounds of their counties, where they may seem necessary and advantageous for the same, and the public at large, by an order of court, to establish a town, and vest any particular tract or parcel of land in trustees for that purpose, on the application of the proprietor , of the land; and the court shall, in such order, ascertain by metes and bounds, the quantities of land that they may deem necessary for such town, appoint the trustees, and fix the name by which it may be called; which order of court, shall as effectually vest the land so allotted for a town, in such trustees, as if done by an act of the legislature.” The act further, after requiring notice of the application,-by advertisement, to be given to the public, provides “ that no town shall be ese tablished on any land under this act, &c. to which any person or persons sets up a claim, either in law .or equity, without consent of the adverse claimant.” And in a subsequent section, the act moreover requires the court, on making an order establishing a town, to take from the applicant bond with security, conditioned “ that if any person shall thereafter establish a better title, either in law or equity, to the land, or any part thereof, on which such town is erected, that he shalípay and account to such person establishing the better title, for all sums of money for which the lots, or the pa?tf of them included within the bounds of such better title, were sold by the trustees.”
Now, as in theorder of the county.court establishing the town, the tract therein described, in strict conformity to the power given to the court by the act, has been vested in the trustees of the town, the title which the heirs of Wirm attempt to derive through their ancestor, must necessarily have passed to the trustees, by the order establishing the town, or the act of the legislature be adjudged inoperative.
But in giving the instructions to the jury,.the court below appears to have gone upon the idea, that the power of the legislature was incompetent to pass any *325 law by which' the title of Winn or his representatives, derived under the patent from the co'mmon wealth, could be divested; and it was upon the same idea, that the opinion of that court was attempted to be sustained in argument. The conclusion to which the court arrived in its instruction to the jury, would, no doubt, follow' as a necessary consequence, if the premises assumed by that court be correct. But by the opinion of the court, we are notinformed from whence tl\e idea was drawn, which exoHfcLes from the legislature the power to enact the law under which the order establishing the town was made; and in argument, wé'were referred to‘ no particular clause of the constitution of this state, or that of the United States, in support of the instructions of the court. There is, however, a provision in the constitution of this state, and another in the constitution of the United States, to one of which, if not both, it is presumed,’.the arguments were intended to apply, though neithefi was cited at the bar.
The provision in the constitution of this state to w'hich we allude, is contained in the twelfth section of the tenth article of that instrument. It declares- that “ no man’s property shall be taken or applied to public use, without the consent of his representatives, and without just compensation being previously made to him.” And in the tenth section of the first article of the constitu-. tion of the United Slates, it is declared that “no state shall pass any law impairing the obligation mf contracts.”
It is not, however, conceded, that there exists any collision ijetween either of those provisions, and the act of the leffislature to w'hich reference has been already made. To be in conflict with the clause cited from the constitution of the United States, the act must impair the obligation of some contract. But as respects the present contest, the obligation of no contract is per - ceived, wdfich, in the opinion ofthe court, can have been impaired by the act. If the obligation of any contract be impaired, it must be the obligation of the contract between Winn and government, whereby the latter granted the land in contest to the formerj unless as that grant emanated from the state of Virginia, it should be supposed that the obligation of the compact between that state,and this, is impaired by the act. It is not; however, admitted that the act has, in the slightest de *326 gree, impaired the obligation of the compact with Virginia. It is impossible for it to have done so, if we were correct on a recent occasion, in limiting the operation of the constitution to legal obligations, and in making the legal obligation of contracts consist in the remedy afforded by law; for it will not be pretended, that the law affords any legal remedy,.either to the state of Virginia or this state, in case either should violate the compact, and, of course, there can exist no legal obligation upon either state, and none such can have been impaired by the act.
But conceding, for the sake of argument, that the compact with Virginia, as well as the grant from that state to Winn, are contracts within the meaning of the constitution of the United States; still, no collision between the constitution, so understood, and the act of the legislature, could be discerned. It is true, according to the construction which we have put upon the act, the title which Winn derived by the grant from the state of Virginia, has, by the order of the county court,, passed to the trustees of the town; but the effect is nothing more than is produced by every act changing the mode of conveying land derived under the laws of Virginia, from one person to another; and the power of the legislature of this state to make such change, it is believed, has never been questioned. To the contrary, the power of the legislature to do so, has been expressly recognized by the supreme court of the United States, in the case of Walden vs. the Heirs of Gratz, 1 Wheaton Rep. 292; and the same principle has been repeatedly acted on by this court. In the case cited’ from Wheaton’s Reports, itis true, the title wasadjudg-ed to pass to the purchaser, under a deed of conveyance executed by the vender, who, at the time of'mak-king the deed, possessed the title; whereas, no such deed of conveyance has ever been executed to the trustees of the town, by the holder of Winn’s title. But if it be competent for the legislature to change the law so as to make the title pass by the act of the party holding the title, what is there to restrict the legislature from-enacting the law under which we have-supposed the title of Winn passed to the trustees of the town? Ifit be thought that the assent of the holder of the title be necessary to pass the title under an act of the legislature," may not the consent of the holder of W inn’s title, be *327 fajrly, inferred from th‘e order of the county court tab-l'ishjng the town? . The act not only requires notice of the intended application to court for an order establishing a town to be given; but it expressly forbids the court to establish1 any town upon land to which any other person sets up a claim, either in law or equity, without the consent ofsuch claimant. It would, therefore, seem to result, as a necessary conclusion from the order establishing the town, that the notice was given which the act requires; and if so, would it be going too far infer the consent of the holder of 'Winn’s title, to the order establishing the town? It is true, the act no where requires personal service of the notice on the adverse claimant; but it requires that which the law deems equivalent, and which, in legal contemplation, has the Same effect.
But, we would not be understood to place the decision of ;fhe present case exclusively upon the implied consent :of the holder of Winn’s title, to the establishment, of the town; for were it even conceded that such a consent is not to be inferred from the order establishing the town, still we should maintain the constitutionality of the act under which the order was made. We would do so upon the broad and general principle, that the constitution of the United States ought never to be construed so as to exclude from the legislature of any state, the power to enact such laws as may have for their object, the application to public use, of the property of any member of the community. It surely cannot have been intended by the framers of the constitution, to exclude from the states any power which is essential to the exf'rcise of the functions of government, which would be the case if the legislatures of the states are prohibited from applying to public use, the property of any individual. Under such a restriction upon the power of the legislature, not even the ground upon which the public convenience and necesssity might require the seat of government or any seat of justice to be placed', could be obtained without the assent of the proprietor; nor would it be in the power of the legislature to cause away to be opened through the land of any.person, without first obtaining his consent, however great might be the public necessity.
If, then, we are correct in supposing that laws having-for there object the application of private property to *328 use, maybe enacted consistently with the constitution, it results that the act under which the order establishing the town of Marysville was made, cannot be incompatible with that instrument; for it is only in cases where the county courts may judge the establish?* ment of towns, within their respective counties, necessary and advantageous for.the county and the public, at large, that the act has authorised them to make orders establishing towns and vesting the title in trustees; and as such an order has been made in relation to the town of Marysville, wc are bound to infer that it was necessary and advantageous for both the county and public at large.
We would not, however, be understood as deciding, that it would be proper, or even competent, for the legislature to take or apply to public use, the property of any individual, without just compensation being previously made therefor.’ It would be incompetent to do so, because it is expressly forbid by the provision cited from the constitution of this state. But it is not essential, under the constitution, that the compensation . should be actually received by the proprietor of the property before it is applied to public use; it is sufficient, that a just compensation be secured to him, as was decided by this court in the case of Cashweller’s heirs vs. M'Ilvoy, 1 Marsh. 84; and such a compensation is secured in the present case, by the bond w'hich was executed by Harrison in the county' court, on'the establishment of the town.
A majority of the court, Judge dissenting, are, therefore, of opinion that the court erred in its instructions to the. jury. The judgment must, consequently*, be reversed .with costs, the cause remanded to the court below, and further proceedings there had, not inconsistent with this opinion.