Chief Justice Robertson
delivered the Opinion of the Court — in which Judge Underwood did not concur.
This is an action of debt, instituted by David Blanchard against “ the Maysville, Washington, Paris and Lexington Turnpike Road Company,'” to recover two hundred and twenty dollars, assessed (upon a writ of ad quod damnum,) as the damage resulting to him from the location and construction of the turnpike road of the company through his land.
After setting forth the acts of assembly in corporating the company and defining its rights, powers and duties, the declaration avers that, as the company was desirous to extend its road through Blanchard’s land without delay, he agreed that it might progress,without first ascertaining and paying the amount of damage which he would sustain ; but with the express understanding, that he claimed damages, and that the company would, in reasonable time, proceed, according to the 13th section of its original charter, to have the damages assessed, and would, when so assessed, pay to him the ascertained amount; that, accordingly, the company “ located and had partly constructed,” the road through his land ; when, pursuant to the agreement, and at the instance and upon the motion of its managers, a writ of ad quod damnum was issued, by order of the county court of Mason, for assessing the damages which would accrue to him in consequence of the construction of the road through his land ; that the damages which he had sustained and would sustain,were assessed to two hundred and twenty dollars, and that the inquisition having been reported to the county court, and approved, the court made an order directing the company to pay the two hundred and twen *87 ty dollars, and declaring that, upon making payment, but not otherwise, it might use the road. The declaration, after exhibiting the order for the writ, the inquistion itself and the order thereon, concludes by averring, that the company had funds sufficient for'paying the damages assessed, and have failed and refused to do so; — but nevertheless had completed and continued to use the road through his land.
Judgment ofthe circuit court.
An action may be maintained against a corporation, upon a liability imposed by the statute by which it is established; or which results, by implication of law, from its acts; or upon a judgment.
The act incorpo rating the Mays» ville, Washington, Paris and Lex. Turn. Co. provides a mode of indemnity for the owner thro’ whose land the road may pass. And he may prevent the construction of the road on hisland, until the damages are assessed, and paid.
The company demurred to the declaration ; and the circuit court sustained the demurrer, and thereupon gave judgment against Blanchard.
As the company is sued in its true corporate name, and as the declaration is in apt form, and contains appropriate allegations, two questions only will be considered by this court — First: does the declaration shew that the appellant has any cause of action against the appellee? Second: is debt an appropriate action ?
I. Whatever diversities may be supposed to exist between the ancient and modern decisions, as to the capacity of a corporation to bind itself by express contract without its common seal, and however undefined the cases may be supposed to be, in which, according to many authorities, such a capacity exists, — there can be no doubt that a statutory corporation tnay be liable to an action upon a liability imposed by its charter, or resulting, by implication of law, from its acts ; and records and judgments, even erroneously rendered, on parol contracts, but'unre-versed and not void, may impose legal liability on all corporations.
Whether the declaration shews any such legal cause of action in this case, may depend upon the proper interpretation of the 13th section of an act of 1829, (Session Acts, p. 155,) by which the company was first incorporated, and which section is as follows: — “ that it shall and may be lawful for the president and directors, by and with their superintendants, engineers, artists, workmen and laborers, with their tools and instruments, carts, wagons and other carriages, and their beasts of draught and burthen, to enter upon the lands, in and over, contiguous and near to which the intended road shall pass, having given notice of their intention to the owners and *88 occupiers thereof, or their agents : provided, that if the said. owners or agents shall not agree with the said turnpike road company as to the damages which he or she may be entitled to, then it shall.be the duty of the said president and directors or said turnpike road company, to make application to the county court of Mason, for a writ of ad quod damnum, to assess the damages which may have been sustained by such party ; and such proceedings shall thereupon be had as are directed by law in relation to the establishment of public roads; and the jury shall take into consideration, the advantages and disadvantages .resulting to the party claiming damages from the establishment of said road, and upon payment of the damages so assessed, or where no damages are assessed, it shall be lawful for said president and directors to open and make .said road, and to dig and carry any stone,gravel, earth, or other materials, necessary for making and repairing said road.” ' • 4
Xf the company and the owner «oree, that the work may go on,and the damages be assessed afterwards, the law implies a liability on the part of the corporation, to pay thedamages tv-hen assessed.
*88 This section secured to owners of land, through which' the road should be constructed, indemnity for any damages which they should sustain in consequence thereof, and, in effect, provides that the company should not run its ■ road through any person’s land unless the owner •should consent thereto, or unless it should proceed, in the mode prescribed, to ascertain the damages, and should pay the assessment. The owner of the land might object to the construction of the road until after an assessment had been made, and the amount assessed, had been paid. By proceeding to construct the road through the appellant’s land, without previously adjusting, by agreement, or by inquisition, the damages which he might sustain, and which he claimed, the company would have violated the 13th section of its charter, and illegally invaded a private right, guarantied to him by the constitution, had not he assented. But that assent was given on the implied condition, that the company should after-wards have an inquest, and pay the amount which should be assessed by it.
As the appellant claimed damages, and as it was the tiuty 0f the company to have had an assessment, the law, which always implies an undertaking by a corpor- *89 alion to do whatever its charter imposes as a duty, implied a promise by the company that, if it should construct the road through the appellant’s land, damages should be assessed and paid. As the company was anxious to proceed without being delayed hy first having an inquisition, and was permitted, for its own convenience and advantage, thus to commence operations on the appellant’s land, and to postpone the inquisition until after the road through his land had been “ partly constructed,” legal responsibility cannot be avoided by objecting that the assessment was not made as soon as the appellant might have required. The phraseology of the 13th section is not as explicit, or altogether as congruous, as it might have been ; but considering the object of the section, and allowing a reasonable and practical import to its language, we cannot, without an unwarrantable perversion of its aim, and an unreasonable misinterpretation of its whole tenor, restrict its application to proceedings prior to the location or construction of any part of the road through the land of the appellant.
The owner may stop the progress 'of the work npon his land, at any time before it is completed.
Questions, as to the rights -md powers of the owner of the land, suggested —not decided.
Both its letter and spirit seem to contemplate an inquisition as to damages which “may have been sustained.” The section secured to the appellant a right to require an assessment and payment of the damages prior to any intrusion on his land. But surely it was never intended that he should forfeit the protection of the statute, by waiving the ‘priority of payment which he might have exacted, but which nothing but a distrust in the company, or a captious spirit, could have prompted him to insist upon. And we cannot doubt that he might, at anytime before the completion of the road through his land, have lawfully7 and effectually stopped its progress, until damages had been assessed according to the provisions of the 13th section, and had been paid to him.
Whether he could have suspended the use of the road after its completion; need not be decided, because that question does not seem to arise upon the declaration in this case. The solution of that question might involve several subordinate and incidental propositions: First. As the company could not legally appropriate the appellant’s land, without his assent, or without paying him for it, *90 would it have a lawful right to the road without making such payment, if he objected to the use of it, as a public highway, until he should be. paid ? Second. Would he have any remedy by suit, for recovering damages ? Third. As trespass could not be maintained, would debt lie in such a case ? Fourth. Would an assessment of damages, upon a writ of ad quod damnum, be legal and binding in such a case ? And fifth. If there had been no such assessment, might the appellant have maintained debt for such damages as a jury should assess on the trial of the suit ?
Where an act establishing a road company provides for indemnities to the owners of the land thro’which the road may pass, and the amount of damage to an own-' er has been ascertained, in the mode prescribed by the act, the corporation is liable for the payment, and to the .action of the owner, without a stipulation under the seal of, the corporation, or any express contract. — See ■unte, p. 87.
But the declaration avers that, when the writ of ad quod damnum was ordered, on the application of the company, the road through the appellant’s land had been ‘partly constructed” only ; and we cannot perceive why, if the appellant had a right to prevent the commencement of the road through his land, he had not an equal right to prevent its completion, before an assessment and payment of damages, according to the provisions of the 13th section. And therefore, it seems to us, that the assessment, as made, was legal, and that', consequently,, a legal obligation to pay the amount assessed, was imposed on the company.
The assessment legally ascertained the amount of liability 5 the company has constructed the road, and is using it ; and is under a legal, as well as moral obligation, to pay the damages which had been assessed. Is it liable for nothing ? Trespass cannot be maintained. Has the corporation a right to pay only what it may be pleased' to offer, or nothing? Has the appellant a right to prevent the use of the road until he shall have been paid ? Can he destroy it ? And shall ho be told that no other resource remains to him ? Even that would afford him no reparation for the loss which he- may have sustained in consequence of the construction of the road. It was certainly the diUy of the corporation to pay damages ; and, having constructed the road, a legal obligation devolved on it to pay the sum ascertained by the inquisition, at its own instance,' pursuant to its charter, and according to its prior obligation. From the charter — from the act of constructing the road (the appellant claiming *91 damages,) — and from the assessment by authority, and with the approval of the county court, — a legal liability to pay the sum so assessed, resulted by operation of law. The intervention of the corporate seal was unnecessary ■ — express contract was not necessary — the liability is as well authenticated and imposed as it could have been by express contract under the corporate seal. Upon such a liability there miist be a right of action. The extrajudicial remedy by the party’s own act, cannot be the only remedial resource. It is only collateral and preventive. It was a natural and constitutional remedy,which the company’s charter could not have affected. The corporation could have had no constitutional right to appropriate the appellant’s land without his assent, or without first paying him an equivalent. The summary remedy, prescribed in the 13th section of the charter, is only declaratory of the law of nature, guarantied by the constitution, and was expressly authorized (in the act of 1829,) merely to prevent collisions and strifes, and afford a cheap and expeditious mode of liquidating damages. As there is a legal obligation to pay the two hundred and twenty dollars, it may be enforced by an appropriate common law action, which has not been superseded, or interdicted by statute, and is perfectly consistent with the more expeditious statutory, or natural, remedy.
The right of the owner to indent nity for having his land appropriated to a public road, is founded on the law of nature, and the constitution -the statute gives the remedy-
Debt is the appropriate action, to recover of a corporation, the dam ages,allowed by a jury, according to law, to the owner, whose land has been taken for the road of a corporation.
II. To enforce such a legal, or implied, liability as that which has devolved on the corporation, debt is an appropriate form of action. 1st. Chitty on Plead. 95-6. Wheaton’s Selwyn, Title Debt.
Wherefore, it is the opinion of this court (Judge Underwood- dissenting,) that the judgment of the circuit court be reversed, and the cause remanded with instructions to overrule the demurrer to the declaration.