CASE 20—PETITION FOR MANDAMUS—SEPTEMBER 9.

# Duncan, trustee, &c. v. Mayor of Louisville.

APPEAL FROM JEFFERSON COURT OF COMMON PLEAS.

1. A FINAL JUDGMENT OF CONDEMNATION OF LAND BINDS THE CITY OF LOUISVILLE TO PAY THE ASSESSED VALUE THEREOF.—Under the provisions of the act of March 9, 1868, the city, if dissatisfied with the amount assessed as the value of the property sought to be taken, must dismiss its petition before final judgment or order upon the inquest or traverse.

2. Having failed before final judgment to dismiss its petition, the city elected to take the property at the adjudged price, and can not be permitted of its own motion to annul a contract evidenced by the judgment of a court of record. The contract upon the part of the city to take and pay for the property was made perfect and complete by the judgment of the court.

3. The city court, being a court of limited jurisdiction, has no power to enter up a judgment against the city upon which the writ of execution can be lawfully sued out.

Duncan, trustee, &c. v. Mayor of Louisville.

4. Having condemned the property and fixed its value by the judgment of condemnation, the city court has no further power to act in the premises until the amount so fixed is paid into court, when it may, under authority expressly granted, proceed to distribute the fund among the owners of the property taken.

5. THE MAYOR OF THE CITY OF LOUISVILLE MAY BE COMPELLED BY MANDAMUS to issue and sell the bonds of the city, and with the proceeds pay into the city court, as required by the judgment of condemnation, the adjudged value of the land condemned by said court for wharf purposes on the petition of the city, under the provisions of acts of 1865 and 1868, and ordinances passed in pursuance thereof.

6. THE JEFFERSON COURT OF COMMON PLEAS HAS JURISDICTION TO ISSUE A MANDAMUS against the mayor of the city of Louisville and compel him to issue and sell the bonds of the city, and with the proceeds pay into the city court the adjudged value of the property so condemned by the judgment of that court.

M. C. JOHNSON,  .  . &#125;
JOHN MASON BROWN,  &#125;  .  .  .  .  .  .  For Appellants,
WM. PRESTON,  .  . &#125;

CITED

Elliott's Digest of Laws and Ordinances of Louisville, pages 147, 148, Act of 1865.

*Ibid.*, pages 338, 339, section 7, Act of 1868.

*Ibid.*, page 872, Ordinance of December 9, 1867.

*Ibid.*, pages 882, 883, Ordinance of August 4, 1868.

*Ibid.*, page 880, Ordinance No. 366.

Story's Equity, section 533.

Civil Code, sections 526, 397.

1 Dana, 86, 87, Blanchard v. The Maysville Turnpike.

1 Marshall, 85, Gashweller's heirs v. McIlvoy.

4 Littell, 325, Jackson v. Winn.

11 New York, 308.        25 Illinois, 518.

15 Grattan, 244.        3 Blackstone, 259, 260.

5 Dana, 533.        1 Marshall, 106.

7 Cranch, 603, Fairfax's devisee v. Hunter.

2 Morehead & Brown's Statutes, 1393, "Roads." *Ib.*, "Mills."

10 Wendell, 396, The People v. The Mayor of New York.

23 Wendell, 458, McCullough v. The Mayor of Brooklyn.

2 Metcalfe, 56, Maddox, &c. v. Graham & Knox.

8 B. Monroe, 648, Page v. Ben. Hardin.

1 Bibb, 309.    1 Marshall, 49.    4 Dana, 336.

Duncan, trustee, &c. v. Mayor of Louisville.

T. L. BURNETT, . . . . . . . . . . For Appellee,

CITED

Elliott's Laws and Ordinances of Louisville, pp. 147–8, 339, 880–883.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

By the 10th section of an act approved June 2, 1865, entitled "An act for the benefit of the city of Louisville," the general council of that city was empowered, by ordinance or resolution, to "lay out, open, widen, or extend any street, alley, or market-place, *wharf* or public landing within the city limits, and to procure the condemnation of real estate and improvements thereon for these purposes by filing a petition in the City Court of Louisville," which court was invested with jurisdiction and authority to award writs of *ad quod damnum* in such cases.

By an act bearing the same title, approved June 3, 1865, said general council was authorized "from time to time, by ordinance, to purchase or lease and improve, for the use and benefit and in the name of said city, any additional or other ground within said city, and fronting and near to the Ohio River, as shall be considered necessary for wharves or places of landing for water crafts of any description," and to provide the necessary funds to pay for said ground so acquired by issuing the bonds of the city and selling them, or by executing them to the vendors of the land in payment therefor.

Under these powers the general council, by ordinance approved August 4, 1868, ordained "that for wharf purposes the mayor is hereby authorized and *directed* to purchase for the use and benefit and in the name of the city of Louisville, and have duly and legally conveyed to said city by deeds with covenants of "general warranty," all the property hereinafter described, or any portion thereof, at prices not exceeding the amounts hereinafter stated; viz., that portion of property lying between Clay and Preston Streets, fronting the Ohio

River, and running through to Fulton Street, at a cost not exceeding one hundred and sixty dollars per foot, river front measurement; also the triangular lots lying between Clay and Preston Streets, at a price not exceeding the adjoining property. . . . . . . . That to pay for the ground authorized by . . . . this ordinance to be purchased, the mayor is hereby authorized and directed to execute and deliver to the proper parties the bonds of the city of Louisville. . . . . . . . That should the mayor be unable to purchase any of the ground described, . . . . he is hereby *directed and authorized* to cause the same to be condemned according to law for the uses aforesaid; and for the purpose of paying for ground thus condemned he is authorized to issue the bonds of the city as described, . . . . and sell the same at the highest market price."

Being unable to acquire title by purchase to a portion of the ground lying north of Fulton Street, and between Clay and Preston Streets, including the triangular lots referred to in said ordinance, the mayor caused the city to file her petition in the city courts, making these appellants and others the claimants of said grounds defendants, and after due preparation an original and an amended writ of *ad quod damnum* were awarded, under and by virtue of which juries were regularly empaneled, and the value of the grounds designated therein assessed.

Upon the return of these inquests the cause was in due time heard, and a judgment rendered condemning said grounds, and decreeing that upon the payment of the assessed value thereof—viz., $59,494.49—the title and possession of the same should be vested in the city of Louisville, in accordance with law; and it was further ordered and adjudged that said city should pay said amount into court within one month from that date, and that upon such payment being made the inquests should be confirmed; the court reserving the power

by further orders to make distribution of said fund among the claimants of the grounds condemned.

This judgment was rendered on the 7th of June, 1869, and the city failing to make the adjudged payment, or any part thereof, appellants, on the 10th of February, 1870, filed their petition in the Jefferson Court of Common Pleas against the mayor of said city, setting up the foregoing state of facts, and praying for the granting of a writ of mandamus to compel said officer to issue and sell the bonds of the city as provided in the ordinance of August 4, 1868, and with the proceeds of such sales to pay the assessed value of their property into the city court as required by the judgment of condemnation, and for such other specific relief as they were entitled to have. Summons and notice were regularly served, and the mayor failing to answer, the cause was submitted for judgment upon the petition and exhibits. Upon consideration the judge of the common pleas court dismissed the petition, and from his judgment the appellants have prosecuted this appeal. The failure of the mayor to plead was a waiver of all formal objections to the proceeding, and appellants were entitled to the relief sought unless their petition failed to set out a state of facts authorizing the court to award in their behalf the extraordinary remedy of the writ of mandamus. Appellee insists that the judgment of the court below should be affirmed:

Because the city of Louisville, as by law it had the right to do, abandoned all claim to the property condemned, and thereby rendered the entire proceeding a nullity.

Because the judgment of the city court, if valid and binding upon the city, can only be enforced by the court in which it was rendered.

And because said judgment, if enforceable at all, can be enforced by other specific and adequate remedies, and hence that mandamus will not lie.

These reasons will be considered in the order in which they are stated.

An act of the General Assembly, approved June 2, 1865, provides, in cases of condemnation by the city of Louisville of private property, that "if the amount allowed to the owners of the land or property be not paid within one month next after the final order of judgment upon the inquest or traverse, the city shall be considered as having abandoned all claim under that condemnation; but the city shall be bound by the finding on the second inquest or traverse on the same property." By a subsequent act, approved March 9, 1868, it is provided "that in proceedings by the city for the condemnation of property the petition may be dismissed by the city as to all or any part of said property at any time before final judgment or order of the court therein; in which event the city shall have the right again to institute proceedings for the condemnation for the same purposes of the property as to which the dismissal was made; but unless by consent of parties not until one year shall have elapsed after said dismissal."

By the first act the city had the right to abandon all claim under the condemnation *after final judgment*, and could make an immediate application for a second writ. By the last act the rights of the parties are essentially changed. The city, if dissatisfied with the amount assessed as the value of the property sought to be taken, must dismiss its petition before final judgment or order upon the inquest or traverse; and having done so can not, without the consent of the owner, sue out a second writ for the space of one year.

In so far as the rights of the parties under such proceedings are thus changed, the last act must be regarded as modifying the first. Both can not be enforced; therefore the latter must prevail.

If the last act does not modify the first, this singular rule of procedure now exists: In case the city shall dismiss before

final judgment, it can not sue out a second writ for twelve months without the consent of the owners of the property sought to be taken; but if it prosecutes the cause to a final judgment, it can, by refusing for one month to pay the adjudged price, abandon its judgment, and sue out a second writ at once. This absurdity is escaped if the last act be construed as repealing the first, in so far as it authorizes the city to abandon a judgment rendered upon its own motion; and such judgment not only comports with reason, but is consonant with the plainest principles of justice.

Having failed before final judgment to dismiss her petition, the city elected to take the property at the adjudged price, and can not now be permitted of its own motion to annul a contract evidenced by the judgment of a court of record, and consummated in conformity with the prayer of her own petition. Having failed to avail herself of her right to dismiss her petition, the contract upon her part to take and pay for the property was made perfect and complete by the judgment of the court, and can not be rescinded except by the consent of her involuntary vendors. (Gashweller's heirs v. McElvoy, 1 A. K. Marshall, 85; Jackson v. Winn's heirs, 4 Littell, 328; Blanchard v. Maysville Turnpike Company, 1 Dana, 88; 15 Grattan, 244.)

But even if this were not so, there is nothing in the record evidencing the fact that the city, acting in its corporate capacity, desires or has attempted to abandon the condemnation. Its mayor has failed and neglected to issue and sell city bonds, and with their proceeds pay the amount adjudged to appellants; but this non-action has not only not been superinduced by any official action on the part of the corporation, but is in direct violation of the express provisions of the ordinance of August 4, 1868, which, so far as appears from this record, remains to this day in full force and effect.

By this ordinance the mayor was not only authorized, but

was "*directed,*" to cause the lands of the appellants to be condemned, and was fully empowered to raise the necessary means to pay for the same.

Under such circumstances it is not to be presumed that a municipal officer, acting in open disregard of a positive law, is reflecting the will of the municipal government by which that law was enacted.

In actions for the recovery of money or property, or for the adjudication and settlement of conflicting claims as to the ownership of property, it is usual and proper for the court in which the judgment is rendered to take all necessary and legal steps for its enforcement; but in many instances the court in which the judgment for the condemnation of private property for public uses is rendered has not the power by any legal process to enforce the payment of the assessed value of the property taken.

Such is the fact in this instance. None of the municipal officers are parties to the proceeding; hence none of them can be reached by attachment. The city court, being a court of limited jurisdiction, has no power to enter up a judgment against the city in which the writ of execution can be lawfully sued out. Having condemned the property, and fixed its value by the judgment of condemnation, said court has no further power to act in the premises until the amount so fixed is paid into court, when it may, under authority expressly granted, proceed to distribute this fund among the owners of the property taken.

The final judgment of the city court had the legal effect of taking and applying to the public use the private property of the appellants without the just compensation to which, under the state constitution, they were entitled having been first actually paid to them. In such cases it has been held to be a substantial compliance with this conservative clause of our fundamental law that a just compensation shall have been

secured to the owners of the property so taken. (1 A. K. Marshall, 85; 4 Littell, 328.)

But when they are thus deferred, and the "*compensation*" is withheld from them by the non-action of some merely executive or ministerial officer who refuses or fails to discharge his official duties in the premises, they are entitled to resort to the most summary remedies provided by law to enforce the payment of the amount adjudged to them by way of such compensation.

The writ of *mandamus* is the remedy provided by law to compel executive and ministerial officers to perform such duties as are enjoined upon them by law. The appellants are clearly entitled to the benefit of this writ, and as the City Court of Louisville has not jurisdiction to grant it, the application was properly made to the Jefferson Court of Common Pleas.

The true ground of complaint in this case is that an officer of the municipal corporation of the city of Louisville has undertaken to set at naught the corporate will. Clearly the corporation must have some remedy to compel its officers to obey and execute its municipal laws. There is no adequate remedy for such a grievance other than a *mandamus*. As the city could have sued out the writ, there can be no valid objection to the parties beneficially interested in enforcing the corporate will (expressed both by ordinance and the judgment of a court of competent jurisdiction, rendered at the instance of the city) being allowed to avail themselves of the same remedies that the corporation would have the right to use; and the assent of the city to this proceeding must be presumed from the fact that it nowhere appears in the record that it has authorized the officer to be defended on its behalf. (The People v. Brennan, 39 Barbour, 536.) Nor do we conceive that this conclusion conflicts with the general doctrine that *mandamus* will not lie to enforce the judgments of courts.

Duncan, trustee, &c. v. Mayor of Louisville.

Even this doctrine, however, is subject to some exceptions. Upon judgments like this against a corporation, so entered up that an execution can not issue, it seems the writ of *mandamus* may be granted. (Tapping's Mandamus, 141.) Further than this; the ordinance directing the mayor to procure the condemnation of the lands belonging to the appellants also authorized and empowered him to raise the necessary means to pay the purchase-price therefor in a specific manner, involving little if any delay. It was this ordinance which " *secured* " to them the payment for their property of the "just compensation" which could not constitutionally be denied them. This ordinance constitutes an essential element in the judgment contract between the parties, and the only way in which this contract can be specifically enforced, according to its spirit, is by requiring obedience upon the part of the mayor to this municipal law. This obedience can be secured by no other specific remedy than the writ of *mandamus,* and we are therefore constrained to conclude that the court below erred in refusing to grant said writ.

Wherefore the judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.