Tracy, &c., v. Elizabethtown, Lexington and Big Sandy Railroad Co.

CASE 49—EQUITY—MAY 16, 1882.

# Tracy, &c., v. Elizabethtown, Lexington and Big Sandy Railroad Company.

APPEAL FROM FAYETTE CIRCUIT COURT.

1. The charter of appellee gives the property-owner the right to a hearing after the return of the verdict and during a regular term of the court, and it is not material when the term begins if a reasonable opportunity be given to the parties for preparation.

2. Sufficient time was given to both parties to be heard.

3. Notice to owners is not expressly required by the charter to be given in any stage of the proceeding, but, by necessary implication, it is indispensable.

4. Necessity and a public use must, in all cases, exist as a condition precedent to the legal right of a railway company to enforce the remedy given by a charter to condemn property.

5. The company is not the judge of the necessity for the condemnation of the property or of the character of its use. The decision of both these questions belongs to the court.

6. The supersedeas was improperly issued, as appellants' remedy was otherwise complete, and would afford them ample protection against an entry before a confirmation or the setting aside the verdict.

HUSTON & MULLIGAN, D. G. FALCONER, AND WM. LINDSAY FOR APPELLANTS.

1. The necessary construction of appellee's charter requires that appellants should have had actual notice.

2. The term at which the verdicts were confirmed was not the next regular term, and the court, at the February term, 1880, had no authority to hear or confirm them.

3. The question of the necessity for the taking appellants' property for the use of appellee's railroad should be determined, not by appellee, but by the court. Appellee cannot adjudicate upon this question. The petition of appellee should have shown how much land it was necessary to take, and the reason for it. (Session Acts 1869, vol. 1, 221; Potter's Dwarris on Stat., 194; Sedgwick on Const. and Stat. Construction, 234; Cooley on Const. Lim., sec. 540; Reed v. Bridge Co., 8 Bush, 73.)

BRECKINRIDGE & SHELBY FOR APPELLEE.

1. Appellee's charter recognizes only one proceeding, and that is set out in section 13, 1 Session Acts, 221-'2.

2. By their charter appellee can acquire the use of one hundred feet of. ground for its track.

3. The right to determine the necessity for the taking is delegated by the legislature to the company as its agent, and the determination of the company is conclusive of the necessity. (Mills on Eminent Domain, secs. 61, 62, 84, 85, 87, 91; Cooley on Const. Lim., pp. 703, 672, 657;. 21 N. Y., 597; Reed v. Lou. Bridge Co., 8 Bush, 72; 2 Rev. Stat., chap. 103, secs. 30, 31, 32; 60 N. Y., 116; 12 Ind., 374; 63 N. Y., 326; 53 *Ib.*, 576; 46 *Ib.*, 550; 1 Barb. Ch., 547; 9 House of Lords, 255.; 14 Wis., 617; Harper v. Lex. & Ohio R. R. Co., 2 Dana, 227.)

JUDGE HARGIS DELIVERED THE OPINION OF THE COURT.

The thirteenth section of an act incorporating the Eliza-bethtown, Lexington and Big Sandy Railroad Company (2d volume Session Acts, 1869), provides "that the president and directors, or a majority of them, or their authorized. agents, may agree with the owners of any land, earth, stone, timber, or other materials or improvements which may be *wanted* for the construction or repair of said road or any of their works, for the purchase in fee-simple, or the use and occupation of the same; and if they cannot agree, or if the owner or owners, or any of them, be a *feme covert*, under age, *non compos mentis*, or out of the county in which the property may lie, application may be made to a justice of the peace of said county, who shall thereupon issue his warrant, directed to the sheriff or any constable of the county, requiring him" to summon a jury to meet on the land, or near the property or materials to be valued, for the purpose of fixing the damages which the owner or owners will sustain by the use and occupation of the property *required* by said company.

The company, by petition, made application to a justice of the peace for a warrant, as prescribed by that section, alleging that it had been unable to agree with the owners of the land, on which it appears a livery stable is situated, as.

to the amount of damages which they would sustain by the condemnation thereof, and that "*it desired to obtain* the title and use in perpetuity" of said land, which is particularly described in the petition.

Without notice or hearing, other than was afforded by an inspection of the petition, the justice issued his warrant, directed to the sheriff, requiring him to summon a jury and proceed with the inquisition as provided by said section.

The sheriff notified the legal title-holders residing in the county, and the occupant of the land and stable, of his intention to hold the inquest, and of the time, place, and purpose of it.

The appellant Tracy, who is the vendee in possession of the land under verbal contract, appeared and filed an answer with the sheriff before the jury was sworn, in which he denied "that the land and property sought to be condemned by the proceedings herein is necessary for said company in the construction or repair of said road, or for their necessary works or buildings," and controverted the right of the company to take or condemn his property.

The issue presented by the answer was not considered by the inquest, the verdict of the jury being confined to the question of compensation alone.

The sheriff returned the verdict to the circuit clerk of the county, who received and filed it during a regular term of the circuit court, on a subsequent day of which it was confirmed.

From that judgment this appeal is prosecuted.

During a former term of this court, appellee's motion to quash the supersedeas and dismiss the appeal was overruled. (See 78th Ky., 309.)

The appellants insist that the proceedings were errone--
ous—

*First.* Because the inquest was filed and heard during a
regular term of the circuit court.

*Second.* Because F. H. Brown, a non-resident owner of
an interest in the property, was not notified of any of the ·
proceedings.

*Third.* Because the necessity for the taking of their prop--
erty for a public purpose was not shown by the appellee.

We will dispose of these questions in the order stated.

*First.* Appellants rely upon a clause in the thirteenth sec--
tion of appellee's charter as forbidding the hearing at the
same term which the verdict was returned.

After specifying by whom the verdict shall be signed,.
returned, and filed, that clause provides that "such verdict
shall be confirmed by the circuit court at its next regular·
term, if no sufficient reason is shown by either party for
setting it aside."

This does not require the term to be *commenced* and the·
trial *had* after the verdict shall have been filed.

It secures to the property-owner the right to a hearing·
after the return of the verdict, and during a regular term of
the court, and it does not matter when the term may have·
begun, provided a reasonable opportunity for preparation
be given the parties.

The appellants were given four days to prepare for trial'
after the verdict was filed, and the number of witnesses.
examined who appear to know all about the property and
its nearness to the court, show that a sufficient opportunity
to be heard was accorded to both parties.

*Second.* Notice to the owners is not expressly required by-
the charter to be given in any stage of the proceedings,.

but we think the charter, by necessary implication, renders notice indispensable. It gives the right to an appeal, and unless notice of the proceedings is required, and a hearing given, such right would be of no value.

There is also a provision in the charter authorizing an agreement for compensation to be made by the company with the owner before the application for the writ of *ad quod dammum*, and certainly notice to the owner is contemplated by this provision, as an agreement could not, without notice, be made with him. And as it does not confine the jury to a view of the property alone in fixing the damages, evidence may, therefore, be given on the question of just compensation, and notice to afford an opportunity to adduce the evidence is essential.

These provisions, when coupled with the restriction that the property must be necessary, as hereafter shown, to the use by the company in discharge of a public duty, indicate an intention, upon the part of the legislature, to require notice to the owners of the proceedings.

It is true that this court, in the case of Harper v. The L. & O. R. R. Co., 2 Dana, 227, held that it was not indispensable that the notice to the *owner* of the land should be by personal service, but it is said in that case the law did not require such notice, yet "there is much propriety in giving it." Of course, if the appellee's charter did not expressly, or by necessary implication, require notice, none, according to that case, would have to be given.

In the case of Cowan v. Glover *et al.*, 3 A. K. M., 357, notice was not dispensed with, except as to non-residents of the county; and such, we think, is the purport of the appellee's charter. And as to F. H. Brown, who is a non-resident of the state, no notice was necessary, because non-

residency of the owner is one of the grounds on which an
application for the writ might be made, and the impractica-
bility of giving notice to such an owner would greatly retard,
if not entirely defeat, the completion of the road.   And in
this particular case the necessity for giving him notice is
greatly limited by the fact that the occupant and claimant
of the land, and the resident legal title-holders, are all be-
fore the court upon sufficient notice.

  *Third.* It does not appear from the record that the ques-
tion, whether the property sought to be condemned was
necessary to a public use, was considered or disposed of in
any stage of the proceedings, either at the inquisition or
before the circuit court, except to the extent of rejecting or
disregarding the answer of the appellants, which presented
an issue upon that question.

  No evidence was offered by either party relative to the
character of the use or the necessity of the taking; and as
the burden is on the company to establish its right to have
the property condemned, the pleadings, in the absence of
evidence, must determine the question.

  The application of the company to the justice of the
peace does not disclose its purpose in seeking the condem-
nation of the property further than its desire to obtain the
title and use thereof in perpetuity.

  What kind of use, or whether any necessity exists for
the taking of this property, does not appear by the petition
or application, or in any part of the proceedings.   The peti-
tion of the company is therefore defective, but the answer
of the appellants cured the defect in the petition by alleging
that it was not necessary to the public use that their prop-
erty should be taken, thus supplying the defective petition

with the necessary averments that had been omitted, and at the same time denying their truth.

A complete issue was thus made by the answer, and the burden was on the appellee, under the pleadings, to show the existence of the essential prerequisites to its right to take the property.

It is erroneous to suppose that the legislature is beyond the control of the courts in exercising the power of eminent domain, either as to the nature of the use or the necessity to the use of any particular property.

For if the use be not public, or no necessity for the taking exists, the legislature cannot authorize the taking of private property against the will of the owner, notwithstanding compensation may be required.

The courts cannot control or supervise the propriety or policy of the condemnation authorized by the legislature; but this uncontrolled power does not authorize the legislature to "so determine that the use is public as to make the determination conclusive upon the courts, . . the existence of the public use in any class of cases is a question to be determined by the courts." (Mills on Eminent Domain, section 10, and authorities there cited.) And it is equally clear from authority that, even where it is conceded that the use is public, the necessity and extent of the exercise of the power of eminent domain belongs to the legislature, subject to two conditions—first, that just compensation shall be made.; and second, that the property desired to be condemned will conduce to some extent to the accomplishment of the public object to which it is to be devoted.

With the degree of necessity, or the extent to which the property will advance the public purpose, the courts have nothing to do. That belongs to the legislature as a political

question, and it is not judicial except so far as the legislature may make it so, by clothing its agents with judicial power and investing the mode of procedure to condemn with the substance and forms of judicial process, which is often done, as in the charter before us, by the legislature.

The doctrine established in New York is, that the courts are to determine the necessity, and the owner may contest that question, as well as whether the use is public. The limit there to the grant of the power of eminent domain is, that the property sought to be acquired must be for purposes of the corporation, and reasonably necessary to it in the discharge of its duty to the public, and we think such should be the rule where the legislature submits the determination of the necessity to the courts or other agencies.

Where, however, the legislature acts primarily, and authorizes the condemnation, and selects the particular property to be condemned, the degree of necessity is wholly with the legislature, if any necessity exists at all, and the purpose be a public one.

Necessity and a public use must, in all cases, exist as a condition precedent to the legal right to enforce the remedy given to condemn, and the company is not the judge of the existence of the necessity, or of the character of the use; both belong to the courts. Under the charter before us, the circuit court is required to hear the parties, and if any sufficient reason be shown by either of them for setting aside the verdict, it is the duty of the court to refuse to confirm it. The circuit court having jurisdiction, therefore, to determine what was a sufficient reason, which necessarily means a legal reason, for setting aside the verdict, ought to have disposed of the issue presented by the pleadings. That issue was simply that the use to which the property was sought to be:

applied was not public, and there was no necessity for taking the property even if the use were public.   The affirmative of both propositions was held by the appellee, and it therefore became its duty to show, the conditions precedent to its right to take the property being denied, that the object was public, and there was a necessity for the appropriation of the property to it.   These things being affirmatively shown, the legal sufficiency of the verdict was the only matter which remains for the court's consideration.

The mere fact that the appellee alleged that it desired the property was insufficient to show that there was a necessity for taking it, or that the purpose was public, as the word "wanted," as used in the charter, is not synonymous with desired, but it was used by the legislature in the sense of necessary, as shown by the ordinary and common sense reading of the section quoted, by its use in the twelfth and fourteeth sections of the charter, and by the substitution for it of the word required in the thirteenth section, which directs that the damages for " the use and occupation of the property *required* by said company" must be assessed under oath.

The company is restricted to the taking of such and so much property as is reasonably necessary to the construction or repair of its road or works, and in order to prevent it from becoming its own judge, the issue presented by the appellants should have been heard and determined by the circuit court, and if the company had failed to show the necessity or the public nature of the use according to the rule herein laid down, the court should have refused to confirm the verdict.

It is not necessary to elaborate the consequences which would flow from the doctrine that a corporation or the legis-

lature could conclusively determine, whether right or wrong, either of these questions, or to expose the inefficiency of the constitutional guarantee of the right to private property by citing instances where it might be taken, if such were the law, for private use. It is sufficient to say that the legislature did not, in this charter, assert the right or delegate the power to the company to determine these questions, but left them with a competent tribunal, before which all parties are entitled to be heard.

It is proper to say, as this case must go back for a new trial, that it is no longer an open question that railroads do belong to that class of uses considered public, and any property which is reasonably necessary to the appellee in the construction or repair of its roads or works may be lawfully appropriated under its charter.

As the appellee had the right, by express provision of its charter, "to proceed to construct their said road as soon as the first verdict of the jury shall be *returned*, whether the same be set aside and a new jury ordered or not," it was suggested to our minds, and we expressed our apprehension in a former opinion herein, that great danger and irreparable injury might result from the entry of the company and destruction of the property; but we are satisfied that the clause of the charter quoted authorizes the company to enter so soon as the first verdict may be returned, and the compensation paid to the owners, or deposited with the sheriff, under the control of the court; for the authority in support of this position is too well established to be overturned in the cases of Jackson v. Winn, 4 Littell, 323; Duncan v. Mayor of Louisville, 8th Bush, 105; Gashweller v. McIlvoy, 1 Mars, 8.

And should the company undertake to enter and take possession of property which it had caused to be condemned, but that was neither necessary to nor for a public use, the owner could prevent the entry by injunction, and thus protect himself from an unlawful taking or application of his property, and we are therefore of the opinion, after mature deliberation, that the supersedeas which we refused to discharge on the motion of the appellee was improperly issued, and ought to have been discharged, as the remedy of the appellants was otherwise complete, and would afford them ample protection against an entry before confirmation or the setting aside of the verdict.

Wherefore, the judgment is reversed, and cause remanded, with directions to grant appellants a new trial upon principles not inconsistent with this opinion.