## ILLEGAL ATTEMPT TO WIDEN A ROAD.

Common Pleas Court of Cuyahoga County.

E. S. WAGAR v. THE CITY OF LAKEWOOD ET AL.

Decided, July 15, 1914.

*Appropriation by a Municipality for Widening a Public Way—Injunction Against, Lies Where No Necessity Exists—And No Necessity Exists Where the Way Has been Narrowed from the Desired Width by Encroachments—Injustice of the Present Method of Fixing Compensation in Municipal Appropriation Proceedings—Binding Character of a Consent Decree.*

1. A claim of lack of jurisdiction on the part of county commissioners to establish a new way can not be based on the failure of the record to state that the required notice was given, where the record does contain the statement that no objection was made to the proceedings, and the road as thereafter laid out has been in continuous use for ninety years.

2. The court finds that the road here in question (now a city street) originally laid out at a width of sixty feet, that its lines as so established were recognized by early village records and confirmed by decree of court, and that its present width of only fifty feet is due to encroachments by the property owners on one side.

3. Such being the case no "necessity" exists for widening the way to sixty feet by appropriating a strip ten feet in width on the side opposite the encroachments, and no necessity existing the proposed appropriation can not be legally made, and injunction lies against such proceedings.

*White, Johnson, Cannon & Neff*, for plaintiff.
*Robert G. Curran*, contra.

FORAN, J.

Some time early in January, 1914, a petition "from property owners on Warren road to widen and pave said road" was presented to the council of the city of Lakewood, Ohio, and "referred to the committee on streets and the director of public works, law and finance." This committee, on January 27, 1914,

reported to the council that at a meeting held January 23, 1914, "it was the consensus of opinion that this road, from Detroit street to Madison avenue, should be made a *sixty-foot* street, and that a ten-foot strip on the easterly side thereof should be purchased or appropriated." The committee therefore recommended that proceedings be at once taken to obtain possession of ten feet of land mentioned in their report, and that the clerk be requested and instructed to obtain the necessary signatures for the appropriation of said ten feet of land. The report of the committee was approved by the council January 27, 1914, the day it was presented or made.

The evidence shows that the city of Lakewood owns and is in possession of land which has a frontage of about seven hundred feet on the westerly side of Warren road, extending from Detroit street southerly toward Madison avenue, on which is located the city hall and fire station, and a school building, a portion of which is occupied by the board of education. The board of education of municipal corporations is empowered by statute to acquire and hold property, but the property so acquired and held by it is held in trust for the municipality; and therefore it may be properly said that the city of Lakewood is the real owner of the property occupied for school purposes.

The westerly side of Warren road is more closely built up than the easterly side, and as the protest or prayer for injunction comes from the owners of property on the easterly side of the road, it is quite evident that the signers of the petition to "widen and pave said road" were largely, if not wholly, owners of property on the westerly side of the road.

In accordance with the recommendation of the committee on streets, a resolution known as No. 1376 was prepared and adopted or approved by the council March 3, 1914. The preamble of this resolution declares: "the necessity for and the intention to appropriate for public use for street purposes for widening and altering Warren road between Detroit street and West Madison avenue, certain property described in the resolution, all of which is located on the easterly side of Warren road."

To carry this resolution into effect, ordinance No. 10005 of the city of Lakewood was prepared and adopted March 17, 1914. The preamble of this ordinance is, "An ordinance to appropriate property for street purposes for widening, altering and improving Warren road between Detroit street and West Madison avenue"; and by Section 1 provided that "an absolute title in fee simple to the land therein described is hereby appropriated to public use for street purposes, for altering, widening and improving Warren road between Detroit street and West Madison avenue," the lands described in the ordinance being the same as in the resolution, and being wholly located on the easterly side of Warren road.

By Section 2 of this ordinance, the director of law was authorized and directed to apply to a court of competent jurisdiction to have a jury empaneled to make inquiry into and assess compensation to be paid for such estate in fee simple.

In accordance with the provisions of this ordinance, proceedings to appropriate the land therein described were thereafter begun in the insolvency court of this county.

On the 25th day of March, 1914, the plaintiff, as a resident tax-payer ·of the city of Lakewood, filed her petition in this court, averring that she, on the 21st day of March, 1914, made a written demand upon R. G. Curran, Esquire, the director of law of said city, to begin an action to restrain the city of Lakewood from misapplication of the funds of said city, and the abuse of its corporate powers in passing said ordinance and threatening to appropriate the land therein described. That said director of law refused to commence said action, and the plaintiff therefore begins this action in her own name on behalf of the city.

In her cause of action the plaintiff says that Warren road was laid out by the county commissioners of Cuyahoga county, Ohio, in 1894, as a sixty-foot road; and that some time thereafter the lines of the road, owing to disputes that arose, were re-established by the county surveyor under direction of the county commissioners. That about 1906 the village of Lakewood, predeces-

sor of the defendant city, claiming the easterly line of the road was considerably farther east than was asserted by the owners of property on the easterly side, was about to seize a strip of land on the easterly side of the road, and that Francis H. Wagar brought an action in this court asking that the village be restrained from so doing, which action was decided in favor of the said Francis H. Wagar, and then appealed to the circuit court of this county, and upon hearing in said court the location of Warren road was fixed and determined and. the defendant perpetually enjoined from disturbing the plaintiff, his heirs and assigns, in the possession of his property east of the east line of said Warren road as therein determined.

She further avers that the owners of property on the westerly side of said road have encroached upon the road at least ten feet, and the defendant city has encouraged this encroachment by encroaching itself on said road by accepting lands and occupying them, which lands encroached ten feet on said road; and that its engineer, under its direction, has given property owners along said street or road, and on the westerly side thereof, a line ten feet easterly of the true west line of said road.

The plaintiff avers the adoption of the resolution and ordinance herein referred to, and says in substance that real purpose of the defendant city, in collusion with property owners on the west side of Warren road, is to unlawfully keep the ten feet of land now in their possession along the westerly side of said road, under the guise of altering, widening and improving the road; and that the road being now sixty feet wide, there is no necessity or any good or sufficient reason for the appropriation, and that the same is an illegal and arbitrary abuse of power and discretion on the part of the council of the defendant city, as well as a betrayal of its public trust.

The petition contains, in addition to the usual prayer for injunction, a prayer for a mandatory injunction requiring the city of Lakewood to open up the westerly ten feet of said road now unlawfully in possession of the defendant and other property owners on the west side of said road. This prayer for

mandatory injunction, however, has been withdrawn, and will not be considered.

The defendant city, in its amended answer, admits that the plaintiff is a resident tax-payer, and that she made a written request upon the director of law to begin an action, and that said director of law refused to comply with said demand.   It admits that one Francis H. Wagar brought an action against the village of Lakewood, as alleged in the petition, which was appealed to the circuit court, wherein a decree was entered; admits that the defendant owns premises on the west side of Warren road at the corner of Detroit street, and extending back a distance of 397 feet; admits the passage of the resolution and ordinance, as alleged in plaintiff's petition, and admits that it intends to appropriate the parcels of land described in said resolution and ordinance.   But it says in its second defense that in the action brought by Francis H. Wagar against the village of Lakewood issue was joined and tried respecting the record of said road, and decree rendered therein by said circuit court wherein and whereby it was found and adjudged that there was no record of said Warren road.   In its third defense it says that neither location of the west line of Warren road nor the width of said road can be determined from the east line as described in said decree, for the reason that said easterly line was fixed in said decree by agreement of the parties; and further, that in the first paragraph of said decree the finding was made that certain fences maintained by said Francis H. Wagar were on the easterly line of Warren road, and that the line of said fences was the easterly line of Warren road; but that in a subsequent part of the decree the easterly line of Warren road was described by monuments and determined to be the easterly line of Warren road; and that the line so described by monuments and determined as said easterly line is not the line of fences referred to in the first paragraph of the decree, but that the line described by monuments was fixed by agreement of the parties and inserted in said decree.

The answer further avers that the property owners on the west side of Warren road are necessary parties to this action,

for the reason that said property owners claim all of the land occupied by them, and claim that they are not encroaching in any manner upon said Warren road.

The testimony discloses that Detroit street, running westerly from the Cuyahoga river, passes practically through the center of Lakewood in a general westerly direction; that Warren road intersects but does not cross Detroit street about one mile east of Rocky river, and runs due south or nearly so.

At the December session, 1823, of the county commissioners of Cuyahoga county, Ohio, the petition of Moses Wagar and others for the opening of Warren road came before the board. There being no objection, the proceedings were read, and "ordered to be recorded and road sixty feet in width." See commissioners' journal and record of bonds, journal one, pages 71-72.

At the March session, 1824, of the board of county commissioners, the petition again came before the board, when the report of the committee to whom the matter had been referred and the report of the county surveyor were read, and no objections being made, "said road was ordered to be recorded."

The course of the road and its length were minutely set forth in the record, which ends in these words: "That said road be opened sixty feet in width, and that an order opening the same issue accordingly." See Road Record A, 179.

These proceedings were had under and by virtue of the act of February 26, 1820, of the General Assembly of the state of Ohio, providing for the opening, establishing and repair of roads. 2 Chase, 1149.

These records were challenged and objection interposed to the introduction of this evidence, for the reason that the records of the county commissioners do not show that the provisions of Section 3 of the act were complied with. This section provides, "that previous to any application being made for an order to lay out a new road or alter an established road, such intended application shall be advertised in three public places in each township through which such proposed road may be designed to run, at least thirty days prior to the meeting of the commissioners

to which the application is intended to be read." It is insisted that because the record fails to show that the notice therein provided for was given, the board of county commissioners had no jurisdiction and was without power to act, and that its action in the premises was void.

The trouble with this objection is, that notwithstanding the commissioners did not have power to lay out Warren road, yet its existence is a palpable visible fact, and has been so for ninety years. If there is any force in the objection, it comes too late. The defendant city is using and has property on the street or road, and the public has used it for ninety years. It will be presumed that public officers perform the duty prescribed by law. At each session of the board, the record shows no objection was made. The object of the notice provided for in Section 3 was to afford an opportunity for objection; and if the secretary of the board deemed it necessary to record the fact that no objection was made, it would seem the notice had been given.

In the case of *McClelland* v. *Miller,* 28 O. S., 488, it is said in the syllabus:

"The statute prescribing what shall constitute the record of the road does not require that all preliminary steps should appear therein, and when the report, survey and plat have been recorded as directed by statute, it will be presumed that all was done which the law required should be done, where the road has long been opened and used with the acquiescence of landholders adjoining."

If this were not sufficient to indicate that the objection is not well taken, it may be said that the village of Lakewood, the predecessor of the defendant city, in its answer in the case of Francis H. Wagar, above referred to, distinctly avers that "along the west side of plaintiff's premises is a highway known as Warren road. That said highway was laid out by the county commissioners of Cuyahoga county, Ohio, about the year 1823. That said road had a width of sixty feet, thirty feet on either side of the center thereof. That said plaintiff has been encroaching on this highway." Surely the defendant herein, after this averment, ought to be estopped from now saying that Warren road

was not laid out originally as a sixty-foot road, and that the county commissioners had no authority to lay out said road, or that their action in the premises was void.

Further objection is made that the record of the county commissioners fails to disclose that the road therein referred to and described is the road now known as Warren road, or, in other words, that it was not described therein *eo nomine.* That the road in question has been known as Warren road during all these ninety years, is not denied. Besides the record describes the road as "beginning at the corner of John B. Kidney and Moses H. Wagar's land, in section No. 22, thence running in a southerly course until it intersects the road on the north line of section No. 2 in Rockport." The land and road records of this county show that the land of Moses Wagar was, as is indicated in this record, and that the road is on the west line of section No. 22. Besides, as has been already stated, the village of Lakewood, in its answer in the Francis H. Wagar case, distinctly states and avers that the name of this highway was known as Warren road.

It must therefore be conceded, and it is so held as matter of fact, that the road in controversy is the road described in the county commissioners' record introduced in evidence; that the road was laid out sixty feet wide, and the land included in the description legally appropriated for road purposes by virtue of the statutes then in force. The owners of the land through which the road ran were absolutely and forever divested of all title thereto, unless the road was thereafter wholly abandoned, and the heirs or assigns of these owners never acquired a shadow of title or interest in the land included in the description, except the right of free and unrestricted access thereto. Unquestionably the road, after being laid out, was fenced, as were all roads at that time, and on the lines and courses fixed and determined by the county commissioners in accordance with the report of the county surveyor, which we find to be specific, definite and accurate; but forever "time rolls its ceaseless course," and fences are no more able to defy his gnawing teeth than man. The fences decayed or were in many instances thrown down or

destroyed, and when rebuilt it would be too much to expect that
they were always replaced on the exact lines of the road. The
roadway itself was only sufficiently wide for road purposes, as
the citizens expended no more labor or money than was abso-
lutely necessary. Encroachments on the land thus appropriated
for public use were gradually made in some instances designedly
and in some instances unconsciously.

In the meantime the city of Cleveland grew apace, and sub-
urban lands became valuable, too valuable for farm use. The
lands in Lakewood west of Warren road were allotted for resi-
dence purposes; a portion of the township of Rockport was in-
corporated as the hamlet of Lakewood, which subsequently be-
came a village, and is now a city. Encroaching owners of real
estate abutting on Warren road, reluctant to vacate the land un-
lawfully occupied, sought in various ways to protect their hold-
ings. The east side abutters charged the west side abutters with
encroaching on the road, and they in turn insisted that the east
side owners were the encroachers on the road. Both sides recog-
nized the road was sixty feet wide, that land necessary for a
sixty-foot road had been appropriated, and that encroachments
had been made upon it. This fact has never before been denied,
and is not now seriously controverted. It is also admitted that
no attempt was ever made, by encroachment or otherwise, to
close the roadway or abandon it as a public highway. It must
also be admitted, as matter of law, that title to any portion of a
public road can not be acquired by prescription or occupancy, no
matter how long such occupancy continues, provided a sufficient
portion of the road remains open to accommodate public travel
and use.

In *McClelland* v. *Miller*, 28 O. S., 488, *supra,* the plaintiff
claimed that he had possession of a strip of ground which he had
enclosed for more than twenty-one years, and therefore had title
to the land so enclosed. Defendant was supervisor of roads, and
claimed in his answer that the plaintiff's premises adjoined the
highway which had been laid out sixty feet wide, and that the
land claimed by plaintiff was a part of this highway upon which

he had encroached. The court, page 502, referring to the claim of the plaintiff, say:

"This position is answered by the case of *Lane* v. *Kennedy*, 13 O. S., 42. The doctrine of that case is that the mere inclosing of a part of a highway by a fence, does not necessarily constitute such adverse possession, as against the public, as will confer title by mere lapse of time."

In *Heddleston* v. *Hendricks*, 52 O. S., 460, it is said in the syllabus:

"The right of an adjacent land owner to enclose by a fence, however constructed, a portion of a public highway can not be acquired by adverse possession, however long continued."

There is some doctrine in 5 O. S., 594, to the effect that a person erecting a permanent improvement, such a large building as a church or block, and by so doing indicating an intention permanently to appropriate land, a question of adverse possession might arise; but wherever this case has been referred to subsequently by our Supreme Court, it is with apology rather than approval. If the whole of the land devoted to a road or appropriated for a road is so enclosed that public travel is prevented, a different question might arise if the road were so enclosed for twenty-one years.

During the last twenty-five years Detroit street has been twice graded and paved. It was for many years a turnpike toll road. If there were ever any monuments on Detroit street at the intersection of Warren road, indicating the exact lines of Warren road, they were long since torn out or obliterated. A few years prior to 1906—just how long prior to that time we are unable to say, but evidently not very long prior to that year—an iron pin was placed at the intersection of Warren road with the center of Detroit street, and defendant city now claims this pin as a monument from which the east and west lines of Warren road are to be determined. It is not claimed that this pin is an ancient monument. Indeed it must be admitted, if it be a monument at all, it is of very recent date. When this road was

laid out in 1824 iron pins were unknown as monuments. In many things outside of monuments of title, that was a neolithic age. There is no evidence in the record showing by whom or by what authority this iron pin was placed as now located. The location, however, of the iron pin was clearly *ex parte* and arbitrary, and concludes no one except insofar as it has been used by the courts as a point in determining the east line of Warren road. A singular and significant fact with respect to this iron pin is, that it was located exactly thirty feet east of the west line now claimed by the defendant and other property owners to be the west line of Warren road, and exactly twenty feet west of the fence lines or line claimed to be the east line of Warren road by land owners on the east side of that road. Indeed owners of real estate abutting on the west side of Warren road, previous to the location of this iron pin, had run their eastwardly lines on a line exactly thirty feet west of the point where the pin was located. If this was a coincidence, it was one that evidently had power to think. It is inconceivable that during the lapse of ninety years the fences on the west line of Warren road remained, or, if rebuilt, were placed precisely to an inch on the west line of Warren road as originally laid out. As has been said, the location of this iron pin, whenever placed, was *ex parte* and arbitrary, and the record does not disclose that anybody was heard at the time the pin was placed where it is now located. If there are any records in the office of the city engineer of Lakewood justifying the location of this iron pin, they were not produced, and it is therefore only fair to presume that there are no such records. If there are any records of the village council of Lakewood ordering the location of this iron pin as now officially located, they were not introduced; and if such record exists, it is fair to presume it would have been produced unless prejudicial to the defendant city's claim. We can not escape the conclusion that an interested party or parties placed this iron pin where it is now located, and we believe the defendant city could, without serious effort, produce these parties. Indeed we are of the opinion that the records of the defendant

city might show that a party or parties vitally interested were at that time in the city council. At all events, shortly after the iron pin was placed where we now find it, the village of Lakewood, through its street commissioner, in July, 1906, was about to enter upon and take possession of a strip of land ten feet wide on the east side of Warren road and extending from Detroit street to West Madison avenue, when it was enjoined from so doing by this court in a suit brought by Francis H. Wagar August 3, 1906. The main contention of the plaintiff in that action was, that there existed a fence on the east line of Warren road which was on the line of a preceding or prior fence, and that these fences existed on the same line for more than seventy years, and that he and his ancestors had continuous, exclusive and uninterrupted occupancy and possession of the land up to this fence line for more than seventy years, and that said fence line was the easterly line of Warren road. The location of the east line of Warren road was fairly raised by the allegation of the petition.

The village of Lakewood in its answer admitted that Warren road, as originally laid out in 1823, "had a width of sixty feet, thirty feet on either side of the center thereof, and that said plaintiff has been encroaching on this highway, and had put his fence out 16½ feet, more or less, in said road." So that the question before the court for determination was the east line of Warren road. On issue joined and after full hearing, many witnesses being called and numerous records introduced, the common pleas court found for the plaintiff, and by its decree established the east line of the road. The court in its decree found that the line asserted by the defendant, the village of Lakewood, to be the center line of Warren road is "a line drawn from the aforesaid iron pin, situated in the intersection of Warren road with the center line of Detroit street, to a stone located at the intersection of Hilliard avenue, and thence proceeding southerly to three stones situated at the center of W. Madison avenue, as now located, with said Warren road. This was the line claimed by the defendant village in its answer. The court then pro-

ceeded and found that the strip of land, which the plaintiff claimed in his petition the defendant village was seeking to seize, was "bounded on the west by a line beginning at the intersection of the southerly line of Detroit street at a point which is 13½ feet easterly of said line claimed by the said village measured on said southerly line of Detroit street; thence running southerly to a point 17 7/10 feet easterly of said line claimed by said village, where it intersects said stone at the intersection of Hilliard avenue with said Warren road." In other words, the common pleas court decree found that the east line of Warren road was a line 13½ feet easterly of the line claimed by said village as indicated by the before-mentioned iron pin.

The cause was appealed to the circuit court by the village of Lakewood, and by that court the judgment and decree of the court of common pleas was in all respects affirmed, except as to a slight difference in the location of the east line of Warren road. On this point the circuit court decree, after finding substantially as the court of common pleas found, found that the strip of land which the plaintiff claimed the defendant village was about to seize, and from doing which they were perpetually enjoined, is described as "a strip of land on the westerly side of plaintiff's land extending from the southerly line of Detroit street as it is now located to the northerly line of West Madison avenue, as it is now located, and bounded on the west by a line beginning at the intersection of the southerly line of Detroit street at a point which is twenty feet easterly of said line claimed by said village as the center line of Warren road, measured on said southerly line of Detroit street, thence running southerly, parallel to said center line of Warren road as claimed by said village, to a point on the northerly line of said West Madison avenue which is twenty feet easterly of said line claimed by said village, measured on a line which is a continuation of said northerly line of said West Madison avenue as now located."

It will be noticed that the line of Warren road as determined and fixed by the court of common pleas is a line beginning at the southerly line of Detroit street 13½ feet east of the iron pin

situated in the intersection of Warren road with the center line of Detroit street, and thence running southerly to West Madison avenue; and this line at the intersection of Hilliard avenue, an avenue between Detroit and West Madison, is 17 7/10 feet east of the line claimed by the village. The circuit court decree fixed the east line of Warren road at a point twenty feet east of the aforesaid iron pin in the intersection of Warren road with the center line of Detroit street, thence running southerly, parallel with the center line of Warren road as claimed by the village, to a point on the northerly line of West Madison avenue, which is twenty feet easterly of the line claimed by the village, making the line from Detroit street to West Madison straight and at all points twenty feet easterly of the center line of Warren road as claimed by the defendant village.

By this decree of the circuit court the plaintiff, Francis H. Wagar, lost 6½ feet of land near the southerly end of Detroit street. The line established by the circuit court, as it runs southerly, intersects or merges at Hilliard avenue with the line established by the common pleas court decree, and then diverges or trends slightly to the west from Hilliard to West Madison. The circuit court decree was much more favorable to the village inasmuch as it secured an east line at all points parallel to the line defendant claimed is the center line of Warren road; and besides the land it secured near the southerly line of Detroit street was at that time and still is vastly more valuable than the land it lost, as the line runs from Hilliard to West Madison. It is important to remember this, as the defendant city, successor to the defendant village, now claims it was not bound or concluded by the circuit court decree, for the reason, as it insists, that the latter decree was a consent decree, the result of a compromise between the parties, the contention being that the plaintiff, being an heir of Francis H. Wagar and seeking the aid of a court of equity in executing a former decree in favor of her ancestor, she does so at the risk of opening up such decrees as respects the relief to be granted in the new suit. This contention is in the nature of a collateral attack upon the decree of the circuit court. This claim can not be successfully urged.

A judgment or decree is "a record of the highest character, importing absolute verity, and works a conclusive estoppel upon parties or privies to aver or prove anything against it.  It speaks for itself, and when it has spoken the parties to it at least are bound to be silent.  Without overturning the very foundations of the law, we are bound to hold that it can only be impeached upon a direct proceeding brought to reverse or annul it." *Bank of Wooster* v. *Stevens et al,* 1 O. S., 233.

It would be a waste of time to cite authorities in support of this proposition.

Counsel for defendants cite many authorities, mostly federal cases.  As the doctrine announced in these cases is substantially identical, we need only refer to one, the case of *The Lawrence Manufacturing Co.* v. *Janesville Cotton Mills,* 138 U. S., 552. This was a case to enjoin the use of a trade-mark.  Before the case was reached for trial an agreement was entered into between the parties, by the terms of which the defendant agreed not to use the trade-mark on any goods of their manufacture after the first day of July, 1886, in consideration of which the plaintiff was to dismiss its suit and release all claims for damages.  By the consent decree subsequently entered, however, the case was not dismissed or discontinued, but on the contrary a perpetual injunction was decreed against the defendant, restraining it from using the trade-mark after July 1, 1886. . The decree was in accordance with the stipulation, except as to the dismissal or discontinuance of the suit, in place of which an affirmative decree in the plaintiff's favor was submitted.  In the plaintiff's view, the decree was left incomplete, and it sought to have it pieced out and then enforced under a prayer for general relief.  The court held that "when a party returns to a court of chancery to obtain its aid in executing a former decree of that court, the court is at liberty to inquire whether the decree was or was not erroneous.  If it be of opinion that it was erroneous, it may refuse to execute it."

It will be noticed that in this case the plaintiff was seeking to take advantage of its own wrong.  The consent decree was not

in accordance with the stipulation or agreement made between the parties at the time the decree was entered. The facts in that case do not justify the claim of the defendant in this case. We can see no distinction between a decree by consent and one announced by the court from the bench. In either case, when it is entered it is the *ex cathedra* utterance of the court. It is said in 23 Cyc., 1057, in the text:

"The rule against collateral attack applies to judgments entered upon confession, either in open court or under warrant of attorney, and also to such as are rendered by consent of parties as the result of a compromise or settlement."

In *Wells* v. *Warrick Martin & Co.,* 1 O. S., 386, it is said in the syllabus:

"A judgment of a court of competent jurisdiction rendered by consent of parties will not be reversed on error."

In *Jackson.* v. *Jackson,* 16 O. S., 163, this doctrine is affirmed:

"So that whatever other errors the court may have committed, there surely was none in making or rendering such final judgment as the parties consented to have entered in the case. If it be substantially decisive of the case, whatever its form may be, it is conclusive between them and will not be reversed on error."

It is further contended that the west side of abutting owners on Warren road were not parties to the suit of Francis H. Wagar, and therefore not bound by the decree.

The village of Lakewood, representing the public, these owners included, was a party to that suit. The case was one of general interest and notoriety. It was fully heard, and every citizen who knew or claimed to know anything about the facts was called as a witness, records, maps and data of every kind that could be procured were presented to the court, several weeks being consumed in the trial of the case.

However, the question now before the court is not whether the west side abutters are bound by the former adjudication, but whether the defendant city, the successor of the defendant village, is bound by the adjudication in that case.

It is admitted by all and denied by none that Warren road, as originally laid out, was sixty feet wide, and that encroachments upon this sixty feet have occurred. The village of Lakewood either arbitrarily fixed or accepted a line arbitrarily fixed by some one as the center line of Warren road, and claimed the right to remove obstructions or encroachments found within thirty feet on either side of the line so fixed or determined. The circuit court decree found there were no obstructions or encroachments within twenty feet eastward of the said line, and it follows inevitably that the center line of Warren road, so fixed or accepted by the village of Lakewood, was not the true center line of said Warren road, but was and is today ten feet easterly of the true line.

If the decree was the result of a compromise, the village accepted the terms of the decree by a solemn act of its council, as that body passed a resolution accepting the terms of the decree authorizing its solicitors to have the decree entered of record. This resolution is known as resolution 1002. It authorizes its solicitors "to settle the litigation on the terms set forth in said journal entry, said journal entry providing, in substance, that the eastern boundary of Warren road shall be a line running parallel with the monumented center line of said Warren road and twenty feet to the easterly line thereof."

Here we find that the village of Lakewood, by solemn act of its council, declared that the easterly line of Warren road shall be a line running southerly, twenty feet easterly and parallel with it, of the line before that time claimed by the village as the center line of Warren road. The village of Lakewood, acting for all of the citizens of said village, through its council, by this resolution fixed and determined forever the easterly line of Warren road; and in so doing, it having admitted that the road was originally laid out sixty feet wide, it follows inevitably that the westerly line of Warren road is forty feet west of the monumented center line claimed by the village at that time. In the proceedings of Francis H. Wagar against the village, the defendant admitted and declared that this road, as originally laid out

in 1823, had a width of sixty feet. Hence, as has been said, the westerly line of the road must be sixty feet westerly of the easterly boundary line fixed and determined by the circuit court; and by ordinance of the village itself it accepted and declared this to be the easterly line. Even if the decree could, as matter of law, be attacked collaterally, the defendant city, as the successor of the defendant village, will not be heard to take advantage of that to repudiate its own act.

The authority mainly relied upon in support of the contention that abutting owners on the west side of Warren road are not bound or concluded by the circuit court decree, is *Lang* v. *Wilson,* 119 Ia., 267. The petition in the case alleged that the defendant, by its conduct, was preventing the plaintiff from access to a public street by encroaching thereon by erecting a dwelling, building fences and planting trees so as to prevent the use of all the street except a strip thirteen feet wide. The prayer was that the obstruction be abated. The defendants answered that they acquired the premises known as Block 4 by purchase, and that in a suit against the city to fix or establish the boundaries of this block and quiet title a decree was entered fixing boundaries as claimed by defendants. The court said, page 269:

"It may not be of importance to the general public whether a particular street is vacated or not. It is important to the individual owner of abutting property that he shall be able to get to and from his residence or business. In such a case access to thoroughfares connecting his property with other parts of the town or city has a value peculiar to him, apart from that shared in by citizens generally, and his right to the street as a means of enjoying free and convenient use of his property has a value quite as certainly as the property itself. * * * Under the allegations of the petition, then, shutting off the approach to the plaintiff's homestead, was the taking of his property, and of this there has been no adjudication."

It will be noticed that the facts in this case are decidedly different from the facts in the case now before us. The owners of property on the west side of Warren road, as found by the circuit court decree, never had any title to the ten feet of land

to which they now lay claim; and taking that ten feet or strip ten feet wide from them will in no way shut off their approach to Warren road. The circuit court decree took from them no property or anything of value, for the simple reason that they never had any title to this land; and in taking it away from them, they could not say that they lost a thing of value; for if they never owned it, they can not lose it in the sense of losing something they were entitled to hold.

The real reason for seeking to take property on the east side of the road will be found in the brief of counsel for the defendant, where it is said: ''The west side lots are shallow lots.'' But there is no valid reason why they should unlawfully hold ten feet of land they do not own, and at the same time demand a sixty-foot street at the expense of their neighbors. If the city of Lakewood is willing to consent to and participate in this loot of the public, the beneficiaries, in common decency, should keep quiet about it and be satisfied with a fifty foot street. It is no answer to say that the party from whom land is proposed to be taken will be compensated. Everyone knows that the fifth federal amendment, forbidding the taking of property without just compensation, is, in eminent domain proceedings, of practically little efficacy. The constitutional provision that compensation shall be assessed without deduction for benefits is evaded by the holding that compensation is not synonymous with damages; that is, that compensation means a sum of money which will compensate for the land actually taken. Damage to the part not taken is not embraced in the constitutional provision; and if there are any such damages, then special benefits conferred upon the land owner by reason of the improvement may be deducted.

This doctrine based upon a subtlety and refinement of reasoning that baffles the ordinary mind, is so well settled in this state that citation of authorities is wholly unnecessary.

Herein lies the injustice of the proposed appropriation, that the west side abutters of Warren road shall unlawfully hold public property, while the east side abutters shall surrender private property without full compensation, as a portion of what may be

assessed, if the property is taken, can be charged back by way of benefits.

The main questions, however, are these: First, is there any necessity for the appropriation? Second, is it for a public purpose?

The committee on streets reported it was the consensus of opinion that this road (Warren) should be made a sixty-foot street from Detroit street to Madison avenue. But that was the "consensus of opinion" of the county commissioners ninety years ago, and they laid it out sixty feet wide. If it is a sixty-foot street now—and we so find—then the further "consensus of opinion" of the committee, that "a ten-foot strip on the easterly side thereof should be purchased or appropriated," would make a seventy-foot street if the "consensus of opinion" prevails.

That there must exist a necessity for the taking, and that the appropriation is for a public and not a private purpose, are fundamental. See *Cincinnati, etc. Ry. Co.* v. *Clinton Co.,* 1 O. S., 77; *Reeves* v. *Wood County,* 8 O. S., 346; *State* v. *Guilbert,* 56 O. S., 575; 50 O. S., 603, affirming 6 N. P., 537; 8 O. D., 268; also 26 Bull., 172.

In order to justify the exercise of the power of eminent domain, the purpose to which the property taken is to be applied must be public, primarily public, and not primarily a private interest incidentally beneficial to the public. *Madisonville Traction Co.* v. *Mining Co.,* 196 U. S., 239.

But it is said an assessment made by the council is not only presumed to be valid, just and proper, but is conclusive upon the court unless fraud or oppression is alleged and proved.

This statement is too broad, and the authorities cited do not support it. The right to exercise the power of eminent domain, it is true, can only be derived from legislative enactment, but it is to be strictly construed against the grantee and liberally in favor of the public, and must not be extended beyond its express terms. *Railroad Co.* v. *Defiance Co.,* 52 O. S., 262; *Anderson* v. *Hamilton Co.,* 12 O. S., 643.

By virtue of Section 3629, General Code, municipalities have power to "widen" streets. The proposed action of the city of

Lakewood is not to "widen" Warren road, for it clearly appears that the purpose is to appropriate ten feet of private property so that the road may be made sixty feet wide; and as the road is already sixty feet wide, the proposition involves a self-evident contradiction. Under the guise of invoking this extraordinary power, ostensibly for the benefit of the public, the defendant is really seeking to grant, by substitution, the land it proposes to take to itself and certain private persons; in other words, the appropriation is for a private and not a public purpose.

In *Corwin* v. *Cowan*, 12 O. S., 63, it was said that the power of the Legislature, under the Constitution of 1802, to take from the owner the absolute fee simple of his land without any other compensation than the benefits to result from the uses for which the land is taken, and then to abandon those uses and sell the lands to be held and used by the purchaser as private property, is, to say the least, very questionable. It seems in effect to be the taking of private property for private use without any compensation whatever.

We think that, in effect, the city of Lakewood, if permitted to appropriate the land mentioned in the ordinance, will be taking private property for private use, and practically without any compensation.

The right to exercise·the power of eminent domain depends upon the demand and requirement of the public interest; and it is well settled that the Legislature can not, directly or indirectly, take private property for private use or private purposes. 1 O. S., 77; 8 O. S., 346; 12 O. S., 633; 25 O. S., 91.

It is quite evident from the facts in this case that the city of Lakewood is seeking to take private property, ostensibly for a public use, but indirectly the result, if the appropriation is permitted, will be a benefit to private persons, and therefore the taking must be held for a private use or purpose.

In *Madisonville Traction Co.* v. *Mining Co.*, 196 U. S., *supra,* Mr. Justice Harlan says:

"It is erroneous to suppose that the Legislature is beyond the control of the courts in exercising the power of eminent domain,

either as to the nature of the use or the necessity for the use of any particular property, for if the use be not public, or no necessity for the taking exists, the Legislature can not authorize the taking of private property against the will of the owner, notwithstanding compensation may be required.''

*Dillon on Municipal Corporations,* Section 1036, is cited in support of the defendant's contention that the courts can not interfere with legislative grant of power to municipalities, unless fraud or oppression be shown. But in the section quoted (that is, Section 1036). the writer says:

''But the question whether the specified use is a public use or purpose, or such use or purpose as will justify or sustain the compulsory taking of private property, is perhaps ultimately a judicial one; and if so, the courts can not be absolutely concluded by the action or opinion of the legislative department.''

It was further held in *Madisonville Traction Co.* v. *Mining Co.,* 196 U. S., *supra,* that ''the state may not prescribe any mode of taking private property for a public purpose which would exclude the jurisdiction of the Circuit Court of the United States.'' It was contended in the case that ''the question of appropriation is one primarily and exclusively for the state to determine.'' Necessity and a public use must in all cases exist as a condition precedent to the legal right to appropriate (*Tracy* v. *Elizabethtown, etc., R. R. Co.,* 80 Ky., 259-265). In this case it was held:

''The company is not the judge of the necessity for the condemnation of the property or of the character of its use. The decision of both these questions belongs to the court.''

In this case, 80 Ky., 259-265, the company took the prescribed mode of appropriation. The owner filed an answer denying ''that the land and property sought to be condemned by the proceeding herein is necessary for said company in the construction or repair of said road.''

While courts will not control or supervise the propriety or policy of the condemnation authorized by the Legislature, yet

this uncontrolled power does not authorize the Legislature to
"so determine that the use is public as to make the determina-
tion conclusive upon the courts.   *   *   *   The existence of the
public use in any class of cases is a question to be determined
by the courts." *Mills on Eminent Domain,* Section 10, and
authorities there cited.

"It is fundamental in American jurisprudence that private
property can not be taken by the government, national or state,
except for purposes which are of a public character, although
such taking be accompanied by compensation to the owner.
This principle grows out of the essential nature of free govern-
ments." *Loan Association* v. *Topeka,* 20 Wall., 655; *Cole* v.
*LaGrange,* 113 U. S., 1-6.

We therefore hold that the city of Lakewood, by ordinance No.
1005, is not seeking to take the property therein described for a
public purpose, but that the purpose it has in view is really
to take ten feet of land located on the east line of Warren road,
and whatever expense or compensation may be paid therefor
shall be borne by the tax-payers; and that at the same time its
purpose and aim is to donate, in effect, a strip of land ten feet
wide on the west side of Warren road running from Detroit
street to West Madison avenue to itself and private property
owners, and that therefore it is not seeking to appropriate this
land for a public use.

We hold, secondly, that no necessity exists for the proposed
appropriation; that Warren road is now sixty feet wide; that it
was so admitted to be sixty feet wide by the village of Lakewood,
the predecessor of the defendant city; and not only admitted,
but declared by solemn resolution of its council to be sixty feet
wide.

And we further find that the city of Lakewood, before it be-
gan these proceedings, appointed a committee, or directed its
committee on streets to investigate the matter, and had full
knowledge of all the facts and circumstances with respect to the
conditions of Warren road and the encroachment thereon by
itself and by property owners on that side of the road.

And we hold further, that it is not acting in good faith in the premises, and that it would be a misapplication of the public funds and a misuse of the power of the corporation to permit it to proceed as contemplated by said ordinance.

For these reasons the injunction prayed for will be granted and made perpetual.

In the case of Mars E. Wagar and other property owners, being No. 138,750, which was tried jointly with this case, the same entry will be made.

As Warren road is a county road, the board of county commissioners, early in 1914, entered into a contract to pave a portion of the road from Detroit street southerly beyond the city limits of Lakewood. The maps, profiles and specifications prepared by the county officials show that the easterly line of the paved strips the county intended to pave encroached upon the line of the road as fixed and established by the circuit court in the case of *Francis H. Wagar* v. *The Village of Lakewood et al.* The proposed pavement, if permitted to be laid in accordance with the terms of the contract, would not leave sufficient space for a sidewalk on the easterly side of Warren road without encroaching upon the lands of east side abutters. A property owner on the east side of the road brought an action in this court against the board of county commissioners to enjoin that body and its contractor from putting down or laying this pavement as contemplated by the contract. A temporary restraining order was allowed by this branch of the court, solely for the reason, and so announced from the bench, that the pavement would encroach upon the easterly line of Warren road as determined and fixed by said circuit court decree. Upon hearing afterwards had before another branch of the court, the restraining order was made perpetual for the same reason. This action or order of this court stands unreversed. No appeal was taken therefrom.

It would seem, under all the circumstances, that the question of the location of the easterly line of this road was *res judicata*. The city of Lakewood was acting in concert with the board of

county commissioners so far as paving Warren road is concerned, and had full notice of all that was done in the premises.

I desire to say here that I am under many obligations to counsel on both sides for the very exhaustive and voluminous briefs filed and suggestions made.

If I have not followed the lines indicated by counsel for the plaintiff and defendant so far as the authorities cited by them are concerned, it is because I desired to pursue an independent line of inquiry, endeavoring as far as I could to be wholly uninfluenced by the arguments of counsel or citation of authorities presented by them.